## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOISES RIVAS,<br><br>                    Plaintiff,<br><br>     vs.<br><br>THOMAS M. HODGSON, Bristol County Sheriff, STEVEN SOUZA, Superintendent of the Bristol County House of Correction and Jail, CATRINA GONCALVES, Assistant Deputy Superintendent of the Bristol County Ash Street Jail and Regional Lock-Up, and JOHN DOE DEFENDANTS 1–10, unknown officers of the Bristol County Ash Street Jail and Regional Lock-Up; all individuals being sued in their individual and official capacity,<br><br>              Defendants. | **Civil Action No.** 18 Civ. 11275<br><br><br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Moises Rivas, by and through his attorneys, alleges the following Complaint against Defendants Thomas M. Hodgson, Steven Souza, Catrina Goncalves, and John Doe Defendants 1–10 (collectively, "Defendants").

## INTRODUCTION

1.  This action seeks damages for Defendants' violations of Mr. Rivas's civil rights under the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, Articles XII and XIV of the Massachusetts Declaration of Rights, the Massachusetts Civil Rights Act, and Massachusetts law against false imprisonment and intentional infliction of emotional distress.

2.  For 18 days, from August 18, 2017 to September 5, 2017, Mr. Rivas was jailed by Defendants at the Bristol County Ash Street Jail and Regional Lock-Up ("Ash Street Jail")—

without a legal basis, without any legal process whatsoever, and in violation of the

Massachusetts Supreme Judicial Court's decision in *Lunn v. Commonwealth*, 78 N.E. 3d 1143

(Mass. 2017).

3.      On various occasions, Defendants attempted to justify Mr. Rivas's unlawful

detention based solely on a Form I-247 Detainer (commonly referred to as an "ICE Detainer" or

"immigration detainer") issued by Immigration and Customs Enforcement (ICE) and several

patently inapplicable federal administrative forms.  However, none of these forms was legally

sufficient to justify detention.

4.      When Defendants unlawfully detained Plaintiff, the Massachusetts Supreme

Judicial Court had already held, in *Lunn*, that Massachusetts law did not authorize Massachusetts

law enforcement to detain an individual solely on the basis of an ICE Detainer.  78 N.E. 3d at

1160.

5.      Nevertheless, from August 18, 2017 to September 5, 2017, Defendants knowingly

and willfully refused to recognize Mr. Rivas's federal and state rights or to abide by *Lunn*, and

they prevented Mr. Rivas's release on bail based on an ICE Detainer and several patently

inapplicable federal administrative documents.

6.      For 18 days, efforts to procure Mr. Rivas's release were continually frustrated by

Defendants' willful and egregious conduct, which resulted in Mr. Rivas's unlawful detention in

violation of federal and state law.

7.      Defendants' disregard for Mr. Rivas's constitutional right to be released upon

posting his bail comported with public statements made by Defendant Thomas M. Hodgson

("Defendant Hodgson")—as the sheriff of Bristol County—indicating animus towards immigrant

communities.  For example, Defendant Hodgson publicly offered to send inmates in his custody

to build a wall along the Mexican border and stated that the immigrant population was to be blamed for the increase in crime rates.

8.      As a direct result of Defendants' extreme and outrageous conduct, Mr. Rivas suffered a deprivation of his liberty, and severe, traumatic emotional distress and mental anguish.

9.      Mr. Rivas seeks, among other things, declaratory relief prohibiting the Bristol County Sheriff's Office and its employees from unlawfully detaining individuals solely on the basis of an ICE Detainer.

## PARTIES

10.     Plaintiff Moises Rivas is a 38-year-old male who, at all material times described herein, resided in New Bedford, Massachusetts.

11.     Defendant Hodgson is the Bristol County Sheriff and maintains an office for the conduct of business at 400 Faunce Corner Road, Dartmouth, Massachusetts 02747.  Pursuant to M.G.L. c. 126 §§ 8A, 16 and 2009 Mass. Acts 61, Defendant Hodgson is responsible for the operation and management of the Ash Street Jail, for all individuals committed thereto, and for appointing the superintendent and any deputy superintendents.

12.     On information and belief, Defendant Hodgson is and was at all relevant times responsible for formulating, implementing, approving, and/or allowing policies and/or customs applicable to the detention of individuals subject to ICE Detainers.  On information and belief, Defendant Hodgson is and was at all relevant times responsible for ensuring that detention policies, customs, practices, and activities in these areas accord with the U.S. Constitution, the Massachusetts Declaration of Rights, and applicable federal and state law and regulations.  On information and belief, Defendant Hodgson also is and was at all relevant times responsible for training and supervising his staff, and has and had the power and authority to change policies or customs to ensure that individuals are detained pursuant to and in accordance with the U.S.

3

Constitution, the Massachusetts Declaration of Rights, and applicable federal and state law and regulations.  At all times relevant to this Complaint, Defendant Hodgson acted or failed to act under color of state law as contemplated by 42 U.S.C. § 1983.  He is sued both in his official and individual capacity.

13.     Defendant Steven Souza ("Defendant Souza") is the Superintendent of the Ash Street Jail and maintains an office for the conduct of business at 400 Faunce Corner Road, Dartmouth, Massachusetts 02747.  Pursuant to M.G.L. c. 126 § 16 and 2009 Mass. Acts 61, Defendant Souza is responsible for all individuals committed to the Ash Street Jail, and for the actions of Defendant Catrina Goncalves ("Defendant Goncalves") and Doe Defendants 1–10—assistants, employees, and officers of the Ash Street Jail—during the course of their employment.  At all times relevant to this Complaint, Defendant Souza acted or failed to act under color of state law as contemplated by 42 U.S.C. § 1983.  He is sued both in his official and individual capacity.

14.     Defendant Goncalves is the Assistant Deputy Superintendent of the Ash Street Jail and maintains an office for the conduct of business at 400 Faunce Corner Road, Dartmouth, Massachusetts 02747.  At all times relevant to this Complaint, Defendant Goncalves acted or failed to act under color of state law as contemplated by 42 U.S.C. § 1983.  She is sued both in her official and individual capacity.

15.     John Doe Defendants 1–10 (collectively the "Doe Defendants 1–10") are unknown/unnamed Defendants who, on information and belief, are believed to be deputies, officers, and/or employees of the Bristol County Sheriff's Office, and were acting under color of state law as contemplated by 42 U.S.C. § 1983.  These individual Doe Defendants 1–10 are sued in their official and individual capacities.

4

16.     When Mr. Rivas ascertains the names of Doe Defendants 1–10, Mr. Rivas will seek leave to amend this complaint to indicate their names.

## JURISDICTION

17.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1343, and 42 U.S.C. § 1983.

18.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201.

19.     This Court has supplemental jurisdiction over the state law claims under Articles XII and XIV of the Massachusetts Declaration of Rights, the Massachusetts Civil Rights Act, and Massachusetts statute and common law, pursuant to 28 U.S.C. § 1367, because the claims form part of the same case or controversy as Mr. Rivas's federal claim.

20.     This Court has personal jurisdiction over all Defendants.

## VENUE

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the District of Massachusetts and because, upon information and belief, Defendants reside in this judicial district.

## FACTS

**I.      ICE Detainers, Administrative Documents, and Local Enforcement Agencies**

22.     ICE enforces immigration laws in the United States.  ICE agents are responsible for the identification and removal of illegal aliens from the United States.

        Form I-247

23.     An ICE Form I-247 is a document an ICE agent may file with state or local law enforcement agencies ("LEA") (1) to alert the LEA that ICE has "determined that there is reason

to believe the [identified] individual is an alien subject to removal from the United States" and that ICE is considering immigration enforcement actions; (2) to request that the LEA notify ICE prior to the identified individual's release; and (3) to request that the LEA maintain custody of the identified individual after he or she would otherwise be released, for a period not to exceed forty-eight (48) hours.

24.     An ICE Detainer is merely a request and "compliance by State authorities with immigration detainers is voluntary, not mandatory."  *Lunn*, 78 N.E.3d at 1152; *see also Morales v. Chadbourne*, 996 F. Supp. 2d 19, 40 (D.R.I. 2014), aff'd in part, dismissed in part, on other grounds, 793 F.3d 208 (1st Cir. 2015).

25.     When an LEA voluntarily complies with an ICE Detainer and extends the detention of an individual who is entitled to release, a new Fourth Amendment seizure occurs. *Morales*, 793 F.3d at 217.

26.     The Bristol County Sheriff's Office maintains legal and actual custody of an individual it detains solely on the basis of an ICE Detainer.

27.     The issuance of an ICE Detainer does not ensure that ICE will assume custody over the detainee or that ICE will take any action against the detainee.  Acting within its discretion, ICE may choose not to assume custody over a detainee held on the ICE Detainer.

28.     On July 24, 2017, nearly a month before Mr. Rivas's unlawful detention began, the Massachusetts Supreme Judicial Court issued its *Lunn* decision, which held that Massachusetts law provides no authority for Massachusetts officers to detain an individual "solely on the basis of a Federal civil immigration detainer, beyond the time that the individual would otherwise be entitled to be released from State custody."  78 N.E.3d at 1160.  Once issued, the decision was immediately binding on Defendants.

Form I-200

29.     An ICE Form I-200 (or "ICE Warrant") is an administrative document that identifies an individual suspected of being subject to deportation and authorizes designated ICE agents to take the identified person into custody.  These documents are not reviewed or issued by a court or judicial officer.  Only an authorized ICE agent is permitted to issue, serve, and/or execute an ICE Warrant.

Form I-203

30.     An ICE Form I-203 (or "ICE Order to Detain") is an administrative document that requests that an LEA house an individual who has *already* been arrested by federal officers and allows the LEA to seek reimbursement for costs of detention.  This document also keeps track of the custody status of a person who is already legally in ICE's custody and accompanies every person who is put into federal immigration detention.  This document does not confer authority to make an arrest.

## II.     Mr. Rivas's Detention, Attempts to Post Bail, and Eventual Release

31.     On August 25, 2016, Mr. Rivas was arraigned in New Bedford District Court, charged with minor non-violent offenses that occurred during a domestic dispute, and was held on $1,500 bail.

32.     Following Mr. Rivas's arraignment, he was held at Ash Street Jail, located at 226 Ash Street, New Bedford, Massachusetts 02740.

33.     At all relevant times, New Bedford Public Defender Ann Grant ("Public Defender Grant") was the attorney who represented Mr. Rivas on his criminal matter.

A.     **Bail Attempts**

Bail Attempt #1 – Friday, August 18, 2017

34.     On Friday, August 18, 2017, a New Bedford District Court Judge reduced Mr. Rivas's bail from $1,500 to $1,000.

35.     Upon information and belief, on Friday, August 18, 2017, the Bristol County Sheriff's Office notified ICE that Mr. Rivas would likely post bail that day.

36.     Upon information and belief, ICE responded by issuing a Form I-200 (ICE Warrant) to the Bristol County Sheriff's Office, stating that there was probable cause to believe that Mr. Rivas was removable from the United States.  The Form I-200 requested delivery of Mr. Rivas to the Rhode Island office of the Department of Homeland Security Enforcement and Removal Operations by Monday, August 21, 2017.

37.     On Friday, August 18, 2017, one of Mr. Rivas's family members attempted to post the $1,000 bail at the Ash Street Jail.  The clerk on duty told the family member that even if bail were posted, Mr. Rivas would not be released because Defendants would continue to hold him until federal immigration authorities could process him on August 21, 2017.

38.     On Friday, August 18, 2017, when Mr. Rivas's family member was attempting to post bail, Mr. Rivas saw a whiteboard in his plain view, and in plain view of Ash Street Jail employees, that read "Do Not Release Moises Rivas."

39.     That day, Mr. Rivas's family member did not post bail because Defendants informed him that Mr. Rivas would not be released from custody—even if bail was posted.

Bail Attempt #2 – Saturday, August 19, 2017

40.     On Saturday, August 19, 2017, Mr. Rivas's family member returned to the Ash Street Jail with Public Defender Grant and interpreter Cristina Bernal ("Interpreter Bernal") to post bail.

41.     Public Defender Grant expressly stated to an Ash Street Jail officer, over the intercom, that Mr. Rivas was entitled to post bail and to be released under *Lunn*.

42.     Nevertheless, that officer told Public Defender Grant that there was an "INS warrant" and that Mr. Rivas would be held for ICE.  Public Defender Grant asked to speak to the Clerk-Magistrate on duty, Clerk Thomas Hibbert ("Clerk Hibbert").

43.     Shortly thereafter, Clerk Hibbert met with Public Defender Grant outside the Ash Street Jail.  Clerk Hibbert told Public Defender Grant that Mr. Rivas was not "going anywhere" because he was subject to an "INS warrant."

44.      When Public Defender Grant asked to see this so-called "INS warrant," the officer who had escorted Clerk Hibbert outside instructed Public Defender Grant to wait outside while the officer went back inside to check for documentation.

45.     Over the intercom, a different officer informed Public Defender Grant that there was no "INS warrant" for Mr. Rivas.  Public Defender Grant responded that Clerk Hibbert had just informed her that there was an "INS warrant."  The officer on the intercom then informed Public Defender Grant that there was in fact a warrant.  When Public Defender Grant asked for identifying information regarding this warrant, she was given file number 094392375.

46.      The officer who had gone inside to check for documentation came back outside and showed Public Defender Grant the Form I-247 (ICE Detainer) and a Form I-200 (ICE Warrant) that was dated August 18, 2017.  When Public Defender Grant requested either a copy of the documents or permission to take a photograph of the documents with her cell phone, the officer said both requests were denied based on the directive given to him by his supervisor, Defendant Goncalves.

47.     The officer admitted to Public Defender Grant that both he and Defendant Goncalves knew that the ICE Detainer and other immigration documents were not sufficient grounds to detain Mr. Rivas.  The officer also told Public Defender Grant that he would call ICE officials to request a warrant sufficient to hold Mr. Rivas, and if the warrant did not arrive by noon that day, Mr. Rivas could be bailed and released.

Bail Attempt #3 – Sunday, August 20, 2017

48.     On Sunday, August 20, 2017, Public Defender Grant and the Immigration Impact Unit of the Committee for Public Counsel Services ("CPCS") arranged for a Massachusetts Assistant Attorney General to be available that day to speak with Ash Street Jail officials over the phone and explain that *Lunn* required Defendants to release Mr. Rivas on bail.

49.     On Sunday, August 20, 2017, Mr. Rivas's family members, accompanied by Public Defender Grant and Interpreter Bernal, returned to the Ash Street Jail and informed an officer at the jail that they intended to post bail for Mr. Rivas.  The officer responded that Mr. Rivas could not be released because of the ICE Detainer.  Public Defender Grant asked to speak to the Clerk-Magistrate on duty; the request was refused.

50.     Public Defender Grant subsequently waited outside the Ash Street Jail and stopped the on-duty Clerk-Magistrate, Peter Thomas ("Clerk Thomas"), as he was leaving the facility.

51.     Public Defender Grant explained to Clerk Thomas and the officer in Clerk Thomas's company that, under *Lunn*, there was no legal basis to hold Mr. Rivas and demanded that he be released upon posting bail.

52.     Clerk Thomas acknowledged Public Defender Grant's position, but claimed that he had no authority to compel the release of Mr. Rivas when the detaining officers had received

contrary directives from their supervisor, Defendant Goncalves.  Clerk Thomas recommended that Public Defender Grant reach out to the Office of Legal Counsel.

53.     Public Defender Grant informed Clerk Thomas that an Assistant Attorney General was available to explain the Massachusetts Supreme Judicial Court's decision in *Lunn*; Clerk Thomas refused to speak to the Assistant Attorney General.

**B.     Petition for Writ of *Habeas Corpus***

54.     On or about Sunday, August 20, 2017, upon information and belief, Defendant Souza informed the Massachusetts Attorney General's office that Mr. Rivas's mittimus (a writ presented to the keeper of a jail or prison directing the keeper to receive and hold an offender awaiting trial or sentence) contained a *criminal* warrant for illegal re-entry.  No such warrant, however, was ever produced to either the Assistant Attorneys General or Public Defender Grant.

55.     The next day, on Monday, August 21, 2017, during a conversation in the New Bedford District Court, Public Defender Grant asked Clerk Thomas if he had ever seen Mr. Rivas's mittimus or the documents that the Sheriff's Office claimed gave it the authority to detain Mr. Rivas.  Clerk Thomas responded that he had not seen such documents.  Furthermore, Clerk Thomas told Public Defender Grant that the whiteboard seen by Mr. Rivas on August 18, 2017, included other names of individuals who were not to be released from custody.

56.     After repeated requests for any documents that provided legal authority for the Bristol County Sheriff's Office to continue detaining Mr. Rivas after he attempted to post bail on August 18, 2017, Public Defender Grant received copies of a Form I-200 (ICE Warrant) and Form I-203 (ICE Order to Detain).  Neither a criminal warrant for illegal re-entry nor any additional documents used to support the ongoing detention were provided or referenced.

57.     On or about August 23, 2017, Public Defender Grant requested a copy of the Form I-247 (ICE Detainer)—which she had previously seen on Saturday, August 19, 2017—

from Attorney Lorraine Rousseau, an attorney at the Bristol County Sheriff's Office.  The
request was denied.

58.     On August 25, 2017, Public Defender Grant filed a Petition for Writ of *Habeas
Corpus* and Complaint for Declaratory and Injunctive Relief, in the Supreme Judicial Court,
against Defendant Hodgson, in his capacity as Bristol County Sheriff, and Defendant Souza, in
his capacity as superintendent of the Ash Street Jail (which Petition is attached as Exhibit A).

59.     The petition asserted that Mr. Rivas was "unlawfully held by the Bristol County
Sheriff's Department on an Immigration and Customs Enforcement (ICE) detainer, [ICE]
warrant (I-200), and [ICE Order to Detain] (I-203) in direct violation of *Lunn v. Commonwealth* .
. . and in violation of Articles 12 and 14 of the Massachusetts Declaration of Rights and the
Fourth and Fourteenth Amendments to the U.S. Constitution."

60.     At or around 11:30 p.m. on September 6, 2017, Mr. Rivas's family member,
accompanied by Public Defender Grant, returned to the Ash Street Jail and successfully posted
Mr. Rivas's bail.

61.     Mr. Rivas was finally released from custody at or around 1:00 a.m. on September
7, 2017, after being unlawfully detained for 18 days.

62.     On September 8, 2017, the Massachusetts Attorney General's Office filed
Respondents' Motion to Dismiss as Moot the Petition for Writ of *Habeas Corpus* and Complaint
for Declaratory Relief (which Motion to Dismiss is attached as Exhibit B).  Therein, Defendants
Hodgson and Souza (Respondents in the *Habeas* Petition) made the following concessions:

  a.     "The respondents do not dispute that at all times relevant to the petition, as
          a matter of state law, the petitioner was entitled to post bail and, in the
          event that bail was posted, to be released from state custody."  Resp't Mot.

to Dismiss as Moot the Pet. for Writ of *Habeas Corpus* and Compl. for Decl. Relief, at 1.

b.   "[T]he respondents have disavowed any state-law authority to hold [Mr. Rivas] under the facts presented here." *Id.* at 2.

c.   "The respondents do not maintain that the federal administrative warrant (Form I-200) provides an independent basis for Massachusetts state or local officials to arrest or hold the petitioner, nor could they, in light of this Court's opinion in *Lunn v. Commonwealth*." *Id.* at 4.

d.   "After the instant petition was filed, the respondents reached out to federal authorities to determine whether the federal government wished to assert the position that the respondents had authority under federal law to hold Mr. Rivas on behalf of federal immigration authorities were he to post bail. Upon information and belief, the federal government has declined to represent the respondents or to enter an appearance in this matter." *Id.* at 3.

**C.   Impact of Detention on Mr. Rivas**

63.   Throughout Mr. Rivas's unlawful detention from August 18, 2017 to September 5, 2017, Mr. Rivas had knowledge of the attempts to post his bail.

64.   Officers and guards at the Ash Street Jail informed Mr. Rivas that he would not be released despite his family member's multiple attempts to post bail. They would cruelly joke at Mr. Rivas's expense about his continued detention and the fact that his family was prevented from posting his bail. On more than one occasion, an officer told Mr. Rivas that he was not going to be released, and that federal immigration authorities wanted to "take him away."

65.     As a direct result of Defendants' conduct, Mr. Rivas has suffered severe, traumatic emotional distress and mental anguish.  Further, Mr. Rivas suffered, and continues to suffer from, depression, anxiety, and difficulty sleeping.  During his imprisonment and for a significant amount of time afterwards, he was scared, confused, shaky, nervous, stressed, and humiliated.  Since his release, Mr. Rivas has experienced a fear of other people, especially law enforcement officials, and has been afraid to go about his daily activities.

66.     Defendants caused the unconstitutional and unlawful conduct and resulting injuries by, among other things, personally participating in said conduct or acting jointly with others who did so.

67.     All Defendants were, at all times relevant to this Complaint, acting under color of state law and within the scope and course of their official duties and employment as officers with Bristol County.

## III.   Bristol County Sheriff's Office's Practice and Supervisory Liability

### A.     <u>The Bristol County Sheriff's Office's Practice of Unlawfully Detaining Individuals Named in ICE Detainers</u>

68.     On information and belief, Mr. Rivas's experience was not unique within the immigrant community, and occurred with regularity in Bristol County due to Defendant Hodgson's anti-immigrant public rhetoric and prioritization of immigration crackdowns.  When Mr. Rivas's family member was denied the opportunity to post bail for Mr. Rivas's release, names of other individuals who were not to be released were listed on a whiteboard along with Mr. Rivas's name.

69.     On information and belief, at all times relevant to this Complaint, the Bristol County Sheriff's Office had a pattern of practice and policy of:

       a.   complying with all ICE Detainers, and thus routinely

14

prolonging detention of individuals solely on the basis of an ICE Detainer after the expiration of any state law authority to detain them;

b.  unlawfully detaining the individuals named in ICE Warrants and Detainer requests without probable cause, without a legal basis, and without providing the detainee adequate legal process to challenge the detainment; and

c.  preventing detainees from securing their release from custody pending resolution of the charges against them—even if the detainees are willing and able to post bail.

70.    Defendants Hodgson, Souza, and Goncalves formulated, implemented, authorized, acquiesced in, encouraged, and/or set in motion these practices and policies that led to the violation of Mr. Rivas's rights under the U.S. Constitution and the Massachusetts Declaration of Rights.

**B.    Supervisory Liability of Defendants Hodgson, Souza, and Goncalves**

71.    In addition to their direct, personal involvement, on information and belief, the patterns of practice described herein were so widespread that the policymaking officials of Bristol County Sheriff's Office (Defendants Hodgson, Sousa, and Goncalves) knew or should have known that their subordinates, including Doe Defendants 1–10, routinely failed to recognize the post-*Lunn* right of a detainee identified in an ICE Detainer, an ICE Warrant, or an ICE Order to Detain to post bail and to be released.

72.    At all times relevant to this Complaint, Defendants Hodgson, Souza, and Goncalves knew or should have known that their subordinates at the Ash Street Jail, including Doe Defendants 1–10:

a.  regularly received immigration detainers from ICE;

15

b.  regularly detained individuals who were named in ICE Detainers, ICE Warrants, or ICE Orders to Detain, including Mr. Rivas, without probable cause, without a legal basis, in violation of *Lunn*, and without providing the detainee adequate legal process to challenge the unlawful detainment; and

c.  failed to investigate sufficiently the unlawful detention of individuals named in ICE Detainers, ICE Warrants, or ICE Orders to Detain, thereby subjecting these individuals to adverse treatment in violation of their rights under the U.S. Constitution and the Massachusetts Declaration of Rights.

73.  On information and belief, at all times relevant to this Complaint, Defendants had no formal or informal training and had no formal or informal policies aimed at preventing foreseeable civil rights violations arising from the unlawful detention of any individual—regardless of immigration status—based on ICE Detainers, ICE Warrants, or ICE Orders to Detain.

74.  Even though Defendants Hodgson, Souza, and Goncalves had the authority, they failed to implement any policies or provide any training to their subordinates post-*Lunn* regarding the treatment of individuals held at the Ash Street Jail solely on the purported authority of ICE Detainers, ICE Warrants, or ICE Orders to Detain.

75.  In spite of their knowledge of the substantial risk of unlawful detention of individuals named in ICE Detainers, ICE Warrants, or ICE Orders to Detain, Defendants Hodgson, Souza, and Goncalves were deliberately indifferent to such risks and to the need for training, and they failed to adequately supervise and train their officers on compliance with important developments in the law.

16

76.     At all times relevant to this Complaint, Defendants' conduct was deliberately indifferent to and in willful, reckless, and callous disregard for Mr. Rivas's rights under federal and state law.

77.     As a direct and proximate result of Defendants Hodgson, Souza, and Goncalves' failure to adequately supervise and train officers at the Ash Street Jail, Mr. Rivas suffered substantial damages, emotional distress and harm, embarrassment, and loss of liberty.

**C.      Defendant Hodgson's Public Animosity Towards Undocumented Immigrants**

78.     If anything, Defendant Hodgson, through public statements, gave employees of the Ash Street Jail supervisory encouragement, condonation, or acquiescence of the practice of unlawfully detaining individuals named in ICE Detainers, ICE Warrants, or ICE Orders to Detain.

79.     Defendant Hodgson has made numerous public statements indicating animus towards undocumented immigrants and policies aimed at protecting immigrant communities. For example, in early 2017, Defendant Hodgson issued a press release offering to send inmates in his custody to help build a wall along the Mexican border. *See* Owen Boss & Joe Dwinell, *Sheriff Thomas M. Hodgson Offers Inmates to Build Donald Trump's Wall*, Boston Herald (January 5, 2017), http://www.bostonherald.com/news/us_politics/2017/01/sheriff_thomas _m_hodgson_offers_ inmates_to_build_donald_trump_s_wall.

80.     Defendant Hodgson also testified in a hearing before the House Judiciary Subcommittee on Immigration and Border Security, stating "[i]f these sanctuary cities are going to harbor and conceal criminal illegal aliens from ICE . . . federal arrest warrants should be issued for their elected officials."  Restoring Enforcement of our Nation's Immigration Laws: Hearings Before the Subcomm. on Immigration and Border Security of the House Judiciary Comm., 115th Cong. (March 28, 2017).

81.     Defendant Hodgson has also sought out partnership opportunities with ICE, blaming undocumented immigrants for an alleged increase in crime rates and listing the "large immigrant population" as a problem.

82.     Defendant Hodgson's proudly touted stance on immigration policies permeates the practices and operation of the Bristol County Sheriff's Office.  Defendant Hodgson's established public stance on immigration issues influences his subordinates' treatment of immigrants, as the Sheriff is ultimately responsible for the operation, administration, and conduct of the Bristol County Sheriff's Office.  His reckless public commentary also provides further evidence of his deliberate indifference to the rights of detained individuals.

## COUNT I
## FOURTH AMENDMENT 42 U.S.C. § 1983
### (*Unreasonable Seizure*)

**Mr. Rivas against all Defendants**

83.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 82 above, as if fully set forth herein.

84.     The Fourth Amendment to the United States Constitution provides that each person has the right to be secure in his or her person, houses, papers, and effects, against unreasonable searches and seizures.

85.     Defendants' unlawful detention of Mr. Rivas, beginning August 18, 2017, and ending September 5, 2017, constituted a new, unauthorized arrest without probable cause and without a warrant, in violation of Mr. Rivas's rights under the Fourth Amendment to the United States Constitution.

86.     The conduct of Defendants violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have known. Defendants exceeded their authority to make detentions, seizures, and arrests.

18

87.     As a direct and proximate result of this unreasonable seizure, Mr. Rivas suffered the damages described herein.

## COUNT II
### FOURTEENTH AMENDMENT 42 U.S.C. § 1983
*(Due Process)*

**Mr. Rivas against all Defendants**

88.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 87 above as if fully set forth herein.

89.     The Fourteenth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of law.

90.     By committing the above-described acts, Mr. Rivas was deprived of his protected liberty interest without due process of law.

91.     The conduct of Defendants violated clearly established constitutional or other rights of which Defendants knew, or of which a reasonable public official should have been aware.

92.     As a direct and proximate result of Mr. Rivas's deprivation of liberty without due process of law, Mr. Rivas suffered the damages described herein.

## COUNT III
*(Failure to Intervene)*

**Mr. Rivas against all Defendants**

93.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.     Defendant Goncalves and Doe Defendants violated Mr. Rivas's Fourth and Fourteenth Amendment constitutional rights by unlawfully detaining Mr. Rivas without adequate due process of law.

95.     Defendants had a duty to intervene and had the opportunity to do so.

96.     Nevertheless, Defendants stood by for 18 days and did not prevent the violation of Mr. Rivas's constitutional rights.

97.     As a direct and proximate result of Defendants' failure to intervene, Mr. Rivas suffered the damages described herein.

## COUNT IV
### M.G.L. C. 12 § 11I
(*Due Process*)

**Mr. Rivas against all Defendants**

98.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 97 above as if fully set forth herein.

99.     As set forth above, Defendants interfered with or attempted to interfere with Mr. Rivas's exercise or enjoyment of rights secured by the Fourth Amendment to the United States Constitution and Article XIV of the Massachusetts Declaration of Rights.

100.     As set forth above, Defendants' interference or attempted interference was accomplished via threats, coercion, and/or intimidation.

101.     As a direct and proximate result of this unreasonable seizure, Mr. Rivas suffered the damages described herein.

## COUNT V
### MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. C. 12 § 11I
(*Due Process*)

**Mr. Rivas against all Defendants**

102.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 101 above as if fully set forth herein.

103.     As set forth above, Defendants interfered with or attempted to interfere with Mr. Rivas's exercise or enjoyment of rights secured by the Fourteenth Amendment to the United States Constitution and Article XII of the Massachusetts Declaration of Rights.

104.     As set forth above, Defendants' interference or attempted interference was accomplished via threats, coercion, and/or intimidation.

105.     As a direct and proximate result of Mr. Rivas's deprivation of liberty without due process of law, Mr. Rivas suffered the damages described herein.

## COUNT VI
### (*False Imprisonment/False Arrest*)

**Mr. Rivas against all Defendants**

106.     Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 105 above as if fully set forth herein.

107.     As set forth above, Defendants were aware that neither an ICE Detainer, an ICE Warrant, nor an ICE Order to Detain were legally sufficient grounds for detaining Mr. Rivas once bail was posted.  Yet, there was a whiteboard in the Ash Street Jail that said "Do Not Release Moises Rivas."

108.     Defendants, acting under color of law, refused to release Mr. Rivas from custody when Mr. Rivas's family member attempted to post the bail set by the court in his criminal case. Defendants' refusal to release Mr. Rivas denied him the right to leave the premises of the Ash Street Jail, directly resulting in his physical confinement for 18 days beginning on August 18, 2017, and ending on September 5, 2017.

109.     Maintaining custody over Mr. Rivas, based solely on an ICE Detainer and past the time when he was otherwise entitled to be released from state custody, constituted a new arrest without probable cause.  *See Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by new probable cause justification.").

110.    Defendants did not have a legal justification for the prolonged detention of Mr. Rivas because Commonwealth law does not authorize the Bristol County Sheriff's Office to detain an individual solely on the basis of an ICE Detainer when the individual is otherwise entitled to release. *See Lunn v. Commonwealth*, 78 N.E. 3d 1143 (Mass. 2017).

111.    Mr. Rivas was acutely aware and conscious of his confinement at the Ash Street Jail.

112.    As a direct and proximate result of this false arrest and imprisonment, Mr. Rivas suffered the damages described herein.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Mr. Rivas against all Defendants**

113.    Mr. Rivas re-alleges and incorporates the allegations set forth in paragraphs 1 through 112 above as if fully set forth herein.

114.    Defendants intended to inflict, or should have known that their conduct—namely, illegally incarcerating and restraining the liberty of Mr. Rivas—would inflict severe emotional distress upon Mr. Rivas.

115.    Defendants' conduct was extreme and outrageous beyond all bounds of human decency and beyond that which a civilized society would tolerate.

116.    As a direct and proximate result of this intentional infliction of emotional distress, Mr. Rivas suffered the damages described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Rivas prays that the Court:

A.      Award Mr. Rivas nominal, compensatory, special, statutory, and punitive damages under 42 U.S.C. § 1983, M.G.L. c. 12 § 11I, and the Massachusetts torts of false imprisonment and intentional infliction of emotional distress;

B.      Award pre-judgment and post-judgment interest to the extent permitted by law;

C.      Award Mr. Rivas his costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988 and M.G.L. c. 12 § 11I;

D.      Declare that detainment of individuals solely on the basis of Form I-247 violates the Massachusetts Supreme Judicial Court's decision, *Lunn v. Commonwealth*, 78 N.E. 3d 1143 (Mass. 2017); and

E.      Award such other and further relief as the Court deems just and appropriate under the circumstances.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Rivas demands a trial by jury of all issues so triable.

Dated:  June 19, 2018                    Respectfully submitted,


                                         By:  /s/ *Kenneth J. Parsigian*
                                              Kenneth J. Parsigian (BBO #55070)
                                              Helen H. Lee (*Pro Hac Pending*)
                                              Shannon Fiedler (BBO #698788)
                                              Shloime Fellig (BBO #699643)
                                              LATHAM & WATKINS LLP
                                              John Hancock Tower, 27th Floor
                                              200 Clarendon Street
                                              Boston, MA 02116
                                              (617) 948-6000
                                              Kenneth.Parsigian@lw.com
                                              Helen.Lee@lw.com
                                              Shannon.Fiedler@lw.com
                                              Shlomo.Fellig@lw.com



                                         By:  /s/ *Oren Nimni*
                                              Oren Nimni (BBO #691821)
                                              LAWYERS' COMMITTEE FOR CIVIL
                                              RIGHTS AND ECONOMIC JUSTICE
                                              61 Batterymarch Street
                                              Boston, MA 02110
                                              (617) 482-1145
                                              onimni@lawyerscom.org


                                         *Attorneys for Plaintiff Moises Rivas*